FREDERICK McLEWEE, Respondent, *v.* BOLTON HALL *et al.*, Appellants.

*Court of Appeals, October 5, 1886.*

1. *Partnership. Liability.*—In order to hold defendants as partners with a corporation to which goods had been sold, where they were not such inter sese, it is necessary for the plaintiff to show that defendants held themselves out as copartners with the corporation and that the corporation obtained credit on that account.

2. *Same.*—The court of appeals has decided, in Cassidy *v.* Hall, 97 N. Y. 159, that the written agreement between the defendants and the corporation which forms the basis of this action does not make them copartners, or liable as such; and in this case holds that upon the question of partnership no substantial ground of difference exists between that and the present case.

3. *Same. Pleadings.*—Where the complaint sets up a cause of action against the defendants either as copartners inter sese, or as holding themselves out as such, the admission in evidence of a promise, original or collateral, by the defendants to pay for the goods sold and delivered to the corporation, against their objection, is error, and, without an amendment of the complaint, proof of the defendants' liability, founded upon a basis other than that stated in the pleadings, cannot be given and acted upon to sustain the unpleaded cause of action.

Action brought by the plaintiff against Hall, Nicoll & Granbery, and the United States Reflector Company, claiming that said firm were copartners with said company, and as such jointly liable for the claim set up in the complaint.

The claim on the trial was sought to be sustained principally upon the following written agreement between the firm of Hall, Nicoll & Granbery and the United States Reflector Company.

" This agreement, made and entered into in the city of New York, this 22d day of April, 1880, between Bolton Hall, Ben-

jamin Nicoll and David W. Granbery, all of the city of New York, composing the firm of Hall, Nicoll & Granbery, parties of the first part, and the United States Reflector Company, a corporation organized and existing under and by virtue of the laws of the state of Connecticut, party of the second part, witnesseth; that,

*Whereas*, said parties of the first part contemplate assuming the control of the said United States Reflector Company, when, if ever, they shall be satisfied that the business of said company is a profitable one and that it fully realizes their expectations; and,

" *Whereas*, it is expedient that some arrangements should be made, whereby the profitableness of said business may be determined by them, and the representations made by said company as to the character and volume of its business may be proven to the satisfaction of the said parties of the first part:

" Now, therefore, in consideration of the premises and of the mutual promises, covenants and agreements each to and with the other made as hereinafter set forth, and of the sum of one dollar each to the other in hand paid, the parties to this agreement do covenant, promise and agree to and with each other in the way manner and form following, to wit:

*First.* The said parties of the first part shall furnish the money necessary to execute the orders of The United States Reflector Company for goods manufactured and to be manufactured by it, in accordance with the claims and specifications of any and all the letters patent to it belonging or otherwise, by making advances of money to said company on such of said orders as they, the said parties of the first part, shall approve of; and when and so long as the said the United States Reflector Company shall be indebted to the said parties of the first part for money paid to it by their said firm in discounting the bills and notes of said company, received by it in the ordinary course of business, as set forth in section 5 of this agreement, then in that case it shall

be obligatory upon said company, and the said company does hereby covenant, promise and agree to allow the said parties of the first part at their option to make such advances on each and every order that it may receive for its manufactured and to be manufactured goods and to submit each and every order to said firm for that purpose, and to pay for such advance as hereinafter set forth ; but when and so long as the said the United States Reflector Company shall be indebted to the said parties of the first part for money paid to it by said firm, in discounting the bills and notes of said company, as set forth in said section five of this agreement, then in that case it shall not be obligatory upon said company to allow said parties of the first part to make such advances ; but the said company may at its option apply to said firm for that purpose.

" *Second.* The said the United States Reflector Company shall and will assign, transfer and set over to said Hall, Nicoll & Granbery, at the time any such advance is made, the bill or order upon which they, the said parties of the first part, shall make such an advance as herein above set forth, with full power to collect and sue for the same and to receipt therefor on collection.

" *Third.* The said parties of the first part shall in all cases collect every bill or order so assigned to them as aforesaid, and upon which they have made an advance to said company as herein above stated ; and out of the money arising from the payment thereof the said parties of the first part shall retain the amount advanced by them thereon as herein above mentioned, together with six per cent interest thereon from the date of such advance, and in addition thereto the amount of twenty-five per cent of the face of every such bill or order where the profits to the said company on the cost of making up the bill or order is 100 per cent, and in the same proportion when the said profit is less ; but in no case the said parties of the first part shall receive less than ten per cent on the amount advanced by them in addition to the

amount so advanced on any bill or order as hereinbefore mentioned.

"*Fourth.* If the said company shall have on hand materials sufficient to make up the whole or part of any order or orders, the said parties of the first part will advance to the said company on the said material, estimated according to its market value, money sufficient to execute said order or orders on the same terms, at the same rates and in the same method as stated in the first, second and third articles of this agreement.

"*Fifth.* The said parties of the first part shall and will discount all such notes, bills, checks, drafts and accounts belonging to said the United States Reflector Company and received by it in the ordinary and usual course of its business as they, the said parties of the first part, shall approve of, but not otherwise, at the rate of six per cent per annum.

"*Sixth.* The said the United States Reflector Company shall and will not, during the continuance of this agreement borrow money on their orders or order for the goods manufactured or to be manufactured by, under and in accordance with any letters patent to it belonging or otherwise, or allow its bills or notes to be discounted by any person or persons whomsoever other than the said parties of the first part.

"*Seventh.* This agreement shall be terminated at any time whatsoever, at the pleasure and option of the said parties of the first part, by a written notice to the company to that effect, served on its treasurer; and on the service of said notice, in the way and manner aforesaid, this agreement shall then cease and determine, and the parties of the first part hereto shall be absolutely and forever discharged and released from any obligation or liability hereby created, except that they, the said parties of the first part, shall have the right and they are hereby empowered to collect any bill or order upon which they have advanced, as provided in the first article of this agreement, and which may not have been collected by them at the time of the termination

of this agreement as hereby provided, and to receive and to retain out of the proceeds of said collection the amounts which, under the third article of this agreement they are entitled to.

"*Eighth.* Unless sooner terminated as hereinbefore provided, this agreement shall continue in full force and effect until the first day of February, 1881, and be binding on the parties hereto and their legal representatives and successors."

Judgment was entered for plaintiff upon a verdict, and the defendants Hall, Nicoll & Granbery appealed to the general term of the court of common pleas, where the judgment was affirmed, from which the said defendants again appealed.

*Williams & Scott,* for appellants.

*F. M. Littlefield,* for respondent.

FINCH, J.—This action was brought against the defendants, as copartners, doing business as such under the name and style, as a firm, of the United States Reflector Company. Unless such a copartnership in fact existed, or was so represented to exist, as to involve liability to third persons dealing upon the faith of the representations, the cause of action pleaded was wholly unproved, and judgment should have gone for the appellants. The actual relation existing, by their mutual agreement, between the firm of Hall, Nicoll & Granbery and the corporation organized and known as the United States Reflector Company was proved upon the trial. That agreement was in writing, entirely undisputed, and there is no pretense that, as between the firm and the corporation, any other agreement establishing their relations *inter sese* was at any time made. We have already decided that the contract referred to did not make the firm and the corporation copartners, and liable as such. Cassidy *v.* Hall, 97 N. Y. 159. The plaintiff, therefore,

under his pleadings could only recover upon the ground that, although not in fact partners, yet Hall, Nicoll & Granbery held themselves out as such, and the Reflector company obtained credit on that account. The fact relied upon were very nearly those which in Cassidy v. Hall we held to be insufficient. They do show a sale to the corporation upon the verbal guaranty of the firm, the former being principal debtor and the later surety, or the reverse, but they do not show, or tend to prove, a representation of an existing copartnership.

The plaintiffs examined George Bridge, who was in the employ of the corporation, and who applied to purchase for it the cross and gas fixtures sued for. Before attempting the purchase, the witness told Hall that no one would trust the Reflector company, to which Hall replied : " You must tell everybody the same as I have told you : we are the Reflector company." This indicated no partnership. It suggested something quite different. The inference which it justified was that the firm had become the owners of the corporation, and were sustaining its credit, but not that a copartnership had been formed. The witness further explained that he was authorized by Hall to say that the corporation was " now in good condition," and that " Hall, Nicoll & Granbery were its backers." These representations were made to plaintiff, but he declined to sell upon them. In some form, he evidently wanted the direct responsibility of the firm, and was unwilling to sell without it. Finally Bridge, by the authority of Hall, promised that the firm should pay the bill, and thereupon the sale was made. The goods were delivered to the Reflector company, charged to it, and the bill sent to it for payment. Many letters from Hall to Bridge were produced. They showed a continuous interference by the firm with the management of the business of the corporation, but an interference natural and proper under the written agree-

ment, which contemplated an effort to restore the company's prosperity and build up its business.

The plaintiff himself was called, and gave his version of the representations leading to the sale. These were that the Reflector company was backed and owned by Hall, Nicoll & Granbery, and was in good condition; that they controlled its business and furnished the money; and that, if he sold to it, he should have his pay. The effort was to bolster up its credit by an assurance of the firm's interest in it and determination to aid it; but there was not a word leading to any inference, or encouraging any belief, that the firm and the corporation had formed a copartnership which was to be the proposed purchaser. On cross-examination he shows that he perfectly understood the real relation existing, and was not misled by even the suggestion of a partnership. He says: "I asked Bridge what relation Hall, Nicoll & Granbery were to the Reflector company and where they were getting their money; and, Nicoll & Granbery, *if they became security for the cross.*" Bridge answered that they controlled the company, not that they were partners in it; that all orders were submitted to them; that bills were paid and collected by them; that they bought for the company, and reimbursed their advances from collections made by them. Other circumstances and incidents were shown, most, if not all, of which were considered by us in the Cassidy Case. Upon the question of partnership, we are unable to see any substantial ground of difference between that case and the present one.

But there is another and graver question involved, although not raised in the appellant's brief. The firm did promise to pay this debt as an inducement to the sale by. the vendors. Whether that promise was original or collateral, and whether the firm may not have become principal debtors for the goods, is a very serious inquiry upon the evidence. Apparently, that is the question which the court submitted to the jury upon the facts, and although

outside of the pleadings, it was covered by the proof. But to that proof an objection was interposed by the defendants. When the promise, "We will pay that bill," was first sworn to by Bridge, the defendant's counsel moved to strike it out upon the ground that the whole theory of the action was a partnership; that what Hall said tending to induce the belief was pertinent, but the promise sworn to "seems without the limits of the pleadings." The court admitted the evidence, "as against Hall," and the defendants excepted. The promise to pay, even if original, was thus admitted only as against Hall, and the ruling cannot stand as a basis of the firm's liability as purchasers and original debtors. The question of pleading was squarely raised, and thereafter, without an amendment of the complaint, proof of the firm's liability, founded upon a basis other than that stated in the pleadings, could not be given and acted upon to sustain the unpleaded cause of action. The admission of the evidence was error which can only be cured by deeming the promise to pay merely evidence bearing upon the question of partnership; and although quite singularly the court submitted this unpleaded cause of action to the jury, stating the inquiry to be whether "Hall meant himself to be the purchaser, together with the United States Reflector Company;" and adding that, if the jury so found, "the plaintiff would be entitled to a verdict because the goods were sold not only to the United States Reflector Company, but to Mr. Hall," and although this charge evoked no objection or exception from the defendant, yet we cannot ignore the fact that the evidence to sustain this unpleaded liability was objected to for that reason, and its erroneous admission, both as against the firm and as against Hall, cannot be resorted to even to save what may be a very just verdict. Possibly, on a new trial, the pleadings, may be so amended as to prevent the very serious question of the primary liability of the firm outside of a

partnership, but, as the case stands, the judgment rendered. was erroneous.

Judgment reversed; a new trial granted ; costs to abide: the event.

All concur, except MILLER, J., absent.